UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ALETA PEER,                      )
                                 )
        Plaintiff,               )
                                 )     Case No. 3:05-1085
v.                               )     Judge Trauger
                                 )
INTEGRA SOFTWARE SYSTEMS,        )
                                 )
        Defendant.               )

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant, Integra Software Systems (Docket No. 22), to which plaintiff Aleta Peer has responded (Docket No. 30), and the defendant has replied (Docket No. 33-1). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND

The defendant is a software development company that "designs, sells and maintains software that automates the mortgage industry."[1] (*See* Docket No. 31 ¶ 1.) It hired the plaintiff on September 1, 2003. The plaintiff's date of birth is March 14, 1953.

In her position as "Product/Pricing Specialist," the plaintiff served as a team leader and had contact with the defendant's customers. The defendant claims that "[the p]laintiff's poor work performance reflected negatively on Integra and caused the loss of more than one

---

[1] Unless otherwise noted, all facts have been drawn from the plaintiff's Responses to Integra's Statement of Undisputed Material Facts (Docket No. 31).

1

customer." (*See* Docket No. 31 ¶ 27.)

The plaintiff was the defendant's primary contact for Gateway Funding Diversified Mortgage Services ("Gateway"). Brian McGovern, Gateway's chief information officer, testified that "[f]rom the very beginning of Gateway's work with Ms. Peer, Gateway had difficulty receiving completed work from Integra on a timely basis. During our work with Ms. Peer, she repeatedly missed deadlines. When we did receive a software product from Ms. Peer, there were numerous date mismatches and errors in the product." (*See* Docket no. 29 ¶ 3.) He also noted that he decided that Gateway should end its relationship with the defendant with respect to that project "because of the poor service provided to us by Ms. Peer." (*Id.* ¶ 4.) The plaintiff acknowledges that "there were errors in the Gateway work." (*See* Docket No. 32 ¶ 38.)

The plaintiff also handled the account of Vitek, another of the defendant's customers. As the plaintiff admits, Vitek expressed to the defendant its belief that the plaintiff was not fully able to meet its needs. In order to retain Vitek as a customer, the defendant had to assign a different employee to the Vitek account.

The plaintiff was also assigned to the First Capital Group ("First Capital") account. Paul Adelmann, a First Capital consultant who worked directly with the plaintiff on this account, testified that the software that it received from the plaintiff "was of no value." (*See* Docket No. 27 ¶ 3.) He recommended that First Capital end its relationship with the defendant on this aspect of First Capital's project, which First Capital did. (*Id.*) Adelmann asserts that he believes that working with the plaintiff "wasted eight months of First Capital's time." (*Id.*)

The plaintiff herself admits that, "[o]n several occassions, [she] missed deadlines for delivering products to clients, on some occasions, deadlines she herself set." (Docket No. 31 ¶ 20.) She also acknowledges that "a new employee, a recent high school graduate working for

2

Case 3:05-cv-01085   Document 35   Filed 06/22/07   Page 2 of 11 PageID #: 376

$8.00 an hour, completed in one week with only three hours of initial training a project of the type that took Plaintiff several weeks to perform." (*Id.* ¶ 21.)

On May 13, 2005, the defendant issued the plaintiff a written reprimand in which it noted that (1) her performance "had become increasingly substandard"; (2) she was "consistently late with the delivery of her assigned projects"; (3) she had a "poor attitude"; and (4) she had, that same day, left work without her supervisor's approval. (*Id.* ¶¶ 68-73.) On June 21, 2005, the plaintiff was terminated.

At the same time that he informed her of her termination, the plaintiff's supervisor, Jason Hebert, offered the plaintiff a contract position under which she would earn $1,500 for each investor guideline that she completed to the defendant's satisfaction. Hebert and the plaintiff exchanged emails about the details of the position but, as of the morning of June 29, 2005, the plaintiff had not told the defendant whether she planned to accept it. That day, Hebert emailed the plaintiff and asked her for a final answer by the defendant's close of business, *i.e.*, 7:00 p.m. The plaintiff responded that evening at 9:45 p.m. with questions about her laptop, among other things, but without an answer.

According to the defendant, it decided that it would extend the plaintiff's offer through July 5, 2005. Having not heard back from the plaintiff by that date, the defendant informed the plaintiff that it was rescinding her offer. The defendant claims that it did so "because it felt that Plaintiff was not interested in the job." (*Id.* ¶ 100.)

The defendant hired two young men soon after the plaintiff's termination. Although the men were hired to "do product guidelines," the plaintiff recognizes that she had been hired to do "much more than product guidelines." (*Id.* ¶¶ 105-07.)

The plaintiff filed a charge of discrimination with the Tennessee Human Rights

3

Commission ("THRC") on an unspecified date. (*See* Docket No. 1 at 2.) She filed her Complaint in this court on December 29, 2005.

**MEMORANDUM**

Although the plaintiff originally complained of "discrimination on the basis of age and gender and retaliation," she appears to have abandoned her gender discrimination claim. (*See* Docket No. 1 ¶ 8.) She admitted in her deposition that she does not believe that her termination "ha[d] anything to do with [her] sex." (*See* Docket No. 24 at 139.) Further, the plaintiff refutes neither the defendant's assertion that she "has not produced a shred of evidence regarding this claim" nor its indication that "her counsel has advised [the defendant's] counsel that Plaintiff will not be pursuing this sex discrimination claim." (*See* Docket No. 23-1 at 10.) As such, the court will analyze only the plaintiff's age discrimination and retaliation[2] claims. The defendant has moved for summary judgment on each of these claims. (*See* Docket No. 22.)

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[2]The court notes, as does the defendant, that the plaintiff failed to mention her retaliation claim in her Memorandum in Opposition to Defendant's Motion for Summary Judgment. (*See* Docket No. 30 at 1-7; Docket No. 33 at 9.) Because it has no other evidence that the plaintiff intends to abandon this claim as well, the court will consider it.

4

(1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

5

**I.       No genuine issue of material fact exists as to whether the plaintiff was subjected to discrimination on the basis of her age.**

The plaintiff claims that the defendant discriminated against her based on her age because, "insofar as she knows, younger men were hired" to replace her. (*See* Docket No. 30 at 4-5.) Like the defendant, the court cannot determine from the plaintiff's pleadings which statute she hopes to use as a vehicle for her age discrimination claim. (*See* Docket No. 23-1 at 11 n.4.) The court will presume that she brings her claim under the ADEA and the THRA, both of which are properly analyzed under the *McDonnell Douglas* burden-shifting analysis that she employs in her Memorandum. *See Brennan v. Tractor Supply Co.*, No. 05-6487, 2007 WL 1296032, at *6 (6th Cir. May 2, 2007) (unpublished); *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

**A.       *The defendant does not contest the plaintiff's assertion that she has established a* prima facie *case of age discrimination.***

To make out an age discrimination claim based on circumstantial evidence, as the plaintiff seeks to do here, a plaintiff-employee must establish a *prima facie* case of discrimination by demonstrating the following elements: (1) she was in a protected class; (2) she was qualified for the position that she held; (3) she was terminated; and (4) she was either replaced by a person not in the protected class or a comparable, non-protected person was treated better. *See Stockman v. Oakcrest Dental Ctr.*, 480 F.3d 791, 801 (6th Cir. 2007).

Once a plaintiff demonstrates her *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for her termination, after which the plaintiff must demonstrate that the proffered reason was mere pretext for what was actually an

6

improper motive.  *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997).

Here, the defendant concedes that the plaintiff has established a *prima facie* case of age discrimination for the purposes of her summary judgment motion.  (*See* Docket No. 33-1 at 2.)  As such, the court will move on to the next step of the *McDonnell Douglas* analysis.

### B.  *No genuine issue of material fact exists as to whether the defendant has advanced a legitimate, nondiscriminatory reason for the plaintiff's termination.*

Once the plaintiff has established a *prima facie* case of discrimination, the burden of producing some legitimate, nondiscriminatory reason for the action falls on the defendant.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Williams*, 132 F.3d at 1131.  This is a burden of production; while the defendant "need not persuade the court that it was actually motivated by the proffered reasons," it must raise "a genuine issue of fact as to whether it discriminated against the plaintiff."  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 666 (6th Cir. 2000) (citing *Burdine*, 450 U.S. at 254).  In making this showing, the defendant must "clearly set forth . . . the reasons for the plaintiff's rejection," and such reasons "must be legally sufficient to justify a judgment for the defendant." *Cline*, 206 F.3d at 666.

The defendant claims that the plaintiff was fired (1) for poor performance, *i.e.*, because she "provided poor work product and clients found it difficult to interact with her . . ."; and (2) because she "was insubordinate and violated [the defendant's] personnel policies."  (*See* Docket No. 23-1 at 12-13.)  With the proffer of this explanation, the defendant has met its burden at this stage of the *McDonnell Douglas* analysis.  *See Arnold v. Marous Bros. Constr., Inc.*, 211 Fed. App'x 377, 381 (6th Cir. 2006) ("This court has confirmed that insubordination can constitute

7

legitimate reasons for termination."); *Clark v. Alcan Aluminum Corp.*, 41 Fed. App'x 767, 775 (6th Cir. 2002 ) (explicitly citing poor performance as a legitimate reason for an adverse action). Accordingly, the onus now shifts to the plaintiff to demonstrate that the defendant's asserted reasons for her termination were mere pretext for discrimination. *See Abbott*, 348 F.3d at 542.

### C. *No genuine issue of material fact exists as to whether the defendant's reasons for the plaintiff's termination were mere pretext for discrimination.*

To demonstrate that her employer's explanation is pretextual, a plaintiff must show, by a preponderance of the evidence, one of the following: (1) that the proffered reasons had no basis in fact; (2) that the reasons did not actually motivate the employer's actions; or (3) that the reasons were insufficient to motivate the employer's actions. *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1084 (6th Cir. 1994). "A blanket denial that the employer's articulated reasons for [taking an adverse action against an employee] . . . were incorrect . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). If the plaintiff demonstrates that the defendant's proffered, nondiscriminatory reason is a pretext, then the fact finder may infer unlawful discrimination. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 345-46 (6th Cir. 1997).

Here, the plaintiff appears to attempt the first showing suggested in *Manzer*. She argues that the defendant's reasons may or may not be true and that, as such, a jury must decide whether the defendant's motives in terminating her were improper. (*See* Docket No. 30 at 5 ("Plaintiff's work cost Integra customers. Maybe or maybe not.").) The plaintiff offers nothing but her own assertions to substantiate her claims that the defendant's articulated reasons for her termination

lack validity. (*See, e.g., id.* ("Ms. Peer's affidavit says that it was Integra's poor performance, not hers, that cost the company business."); *id.* at 6 (arguing that "Ms. Peer's affidavit flatly contradicts" the defendant's assertion that "it had been [its] policy for employees to ask their supervisors for permission to leave the office in writing" (citing Docket No. 31 ¶ 63)).)

As the Sixth Circuit clearly articulated in *Irvin*, a plaintiff's unsubstantiated denials of a defendant's legitimate, nondiscriminatory reasons for taking an adverse action against her are not enough to carry her burden of demonstrating that the reasons are mere pretext for discrimination. *See Irvin*, 837 F.2d at 726. In *Irvin*, that court rejected a plaintiff's submission of affidavits that "amount to nothing more than a denial of the proof . . . without setting forth the basis for such a blanket denial." *Id.* The plaintiff's submissions in this case are much the same. As such, the court finds that, like in *Irvin*, "[d]isputation of the facts underlying [the defendant's] legitimate . . . reason[s] for [its adverse action] is not sufficient to carry [the plaintiff's] burden."

Accordingly, because the plaintiff has not met her burden of demonstrating pretext, the defendant's motion for summary judgment on her age discrimination claim will be granted. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

## II.  No genuine issue of material fact exists as to whether the defendant retaliated against the plaintiff.

The plaintiff alleges that the defendant retaliated against her when, following her termination, it allegedly withdrew its offer of a contract position after it learned that she had filed a charge of discrimination with the THRC. (*See* Docket No. 1 at 2.) Analysis of a Title VII

9

retaliation claim supported by circumstantial evidence, such as the one advanced by the plaintiff in this case, is conducted according to the *McDonnell Douglas* burden-shifting framework.  *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002); *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991).

In order to establish a *prima facie* case of retaliation under this framework, a plaintiff must demonstrate the following by a preponderance of the evidence: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an employment action adverse to her; and (4) a causal connection existed between the protected activity and the adverse employment action.  *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).  The burden of establishing a *prima facie* case in a retaliation action is not onerous, but easily met.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Once a plaintiff demonstrates a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action, after which the plaintiff must demonstrate that the proffered reason was a mere pretext for retaliation.  *See Abbott*, 348 F.3d at 542; *Williams*, 132 F.3d at 1131.

### A.    *Because no reasonable juror could find that the plaintiff has met her burden of establishing a* **prima facie** *case of retaliation, the court need not continue with its analysis.*

The court's analysis of the plaintiff's retaliation claim need not proceed beyond the *prima facie* level because the plaintiff has failed to demonstrated that the defendant was aware of her protected activity, *i.e.*, that she had filed discrimination charges with the THRC.  Indeed, the plaintiff admits that she "has no evidence that [the defendant] received her THRC charge before

10

rescinding its contract offer" and that such a conclusion "was just an assumption made on [her] part." (*See* Docket No. 31 ¶¶ 108, 110.)

The defendant maintains that neither of the individuals who rescinded the plaintiff's offer were aware that the plaintiff had filed a THRC charge when they did so. (*See id.* ¶ 112.) Both individuals have testified to this lack of awareness. (*See* Docket No. 25 ¶ 10 (testimony of Integra President Gerald Pratt that the defendant sent the plaintiff a letter informing her of their rescission of her offer "in the early afternoon of June 5, 2005" but did not receive notice of her THRC charges until "[l]ater on that same day"); Docket No. 24, Ex. 3, at 29 (testimony of Integra Director of Implementation and Quality Assurance Jason Hebert that, at the time he rescinded the plaintiff's offer, he did not know that she had filed a discrimination charge).

The plaintiff does not rebut this testimony in any way. As such, she has not met her burden to demonstrate by a preponderance of the evidence that the defendant was aware of her protected activity before it terminated her. *See Abbott*, 348 F.3d at 542. As such, her retaliation claim must fail and summary judgment will be granted for the defendant.

## **CONCLUSION**

The plaintiff has failed to offer evidence that would allow a reasonable jury to conclude that she has been subjected to discrimination or retaliation. Thus, the defendant's motion for summary judgment on these claims will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11